IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

DAVID BUSH, an individual,

                Plaintiff,

v.                                     CIVIL  ACTION  NO.  3:08-1422

AMERICAN BENEFIT CORPORATION,
a West Virginia Corporation, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are cross motions for summary judgment by Plaintiff David

Bush and Defendants American Benefit Corporation (hereinafter ABC) and Employer-Teamsters

Local Nos. 175/505 Pension Trust Fund (hereinafter the Fund).[1]  For the following reasons, the

Court **GRANTS** the Motions for Summary Judgment by Defendant ABC and the Fund [Doc. Nos.

19 & 23] and **DENIES** the Motion for Summary Judgment by Plaintiff [Doc. No. 21].

**I.**
**FACTS**

In 1958, the Fund was created by various local unions and employers that entered into

agreements to provide pension benefits to participants.  From July 1975 through October 1983,

Plaintiff worked for a variety of employers contributing to the Fund.  Plaintiff states that he received

51 months "Credited Service"[2] for this time period.[3]  From 1989 through 2003, Plaintiff also worked

---

[1]Defendant Fund states that it is misidentified in the Complaint as the Employer-Teamsters
Joint Counsel No. 84 Pension Fund Plan.

[2]In relevant part, "Credited Service" is defined in the Plan as "the sum of Past Credited
(continued...)

for contributing employers and he earned 118 months of "Credited Service" and 12 "Years

Participation"[4] towards his pension.  It is undisputed that Plaintiff's 12 "Years of Participation" after

_____

[2](...continued)
Service and Future Credited Service[.] *Employer-Teamsters Local Union Nos. 175 and 505 Pension Trust Fund, Pension Plan*, at § 15.06, in part (restated effective May 1, 1998).  According to the Fund, Plaintiff only had Future Credited Service.  "Future Credited Service" is defined as

> a Participant's total years and completed months of service with all Employers on and after his entry date into this Plan since his Last Break-in-Service Date for which contributions to the Trust Fund have been made, as required, by Employers on behalf of such Employee.
>
> A year of credited service shall mean twelve (12) months in which contributions are made to the Fund on an employee's behalf.

*Id*. at § 15.06(b).

[3]In its brief, the Fund states that there was an error in calculating the credit and it actually is 50 months. *See Admin. R.* at 14 and 48.  By letter dated September 3, 2002 from ABC to Plaintiff, he was given 49 months credit. *Id*. at 80.  Upon review of the Employer-Teamsters Joint Council No. 84 Health & Welfare and Pension Record Card, the Court also calculates 49 months. *Id*. at 48 and 83.

[4]Pursuant to § 15.05(h), a "Year of Participation" is defined as:

> a calendar year in which a Participant has at least five (5) Months of Service, twenty-two (22) Weeks of Service, or one hundred (100) Days of Service. However, with respect to a Participant's accrued Years of Participation as of July 1, 1976 (the Effective Date), each full year of Future Credited Service credited to him as of July 1, 1976, shall be deemed to be a Year of Participation and, furthermore, after having exhausted in this manner all of such Participant's full years of Future Credited Service, if there at least five (5) completed months of Future Credited Service remaining, such completed months shall be deemed to be one (1) full Year of

(continued...)

-2-

1989 entitles him to at least a "Normal Retirement Benefit." To obtain that benefit, the Plan requires:

> a Participant must retire from Covered Employment on or after his Normal Retirement Age (i.e., the later of (i) age sixty (60) or (ii) the completion of ten (10) Years of Participation in the Plan since his last Break-in-Service Date). For employees of this Fund, employees of Employer-Teamsters Local Nos. 175 and 505 Health and Welfare Fund, employees of the Local Unions not subject to Collective Bargaining Agreements requiring contributions to the Plan, and employees having one or more hours of Future Credited Service on and after January 1, 1997, the foregoing sentence requiring ten (10) Years of Participation is replaced by five (5) Years of Participation.

*Employer-Teamsters Local Union Nos. 175 and 505 Pension Trust Fund, Pension Plan*, at § 2.04(a)(1) (restated effective May 1, 1998). On September 8, 2003, Plaintiff stopped working because of health reasons, and he was awarded social security disability benefits as of that date. *Admin. R.* at 58.

Long before he stopped working, Plaintiff inquired about his pension and the amount of benefits he would receive. On September 3, 2002, ABC sent Plaintiff a letter stating that his service prior to 1989 was forfeited because he experienced a "Break-in-Service" from 1984 through 1988, which was before his benefits became vested. *Id*. at 80-81.

---

[4](...continued)
      Participation.

*Id*. at § 15.05(h).

Apparently in response to another inquiry by Plaintiff, ABC sent him a second letter dated June 10, 2004, stating that its 2002 decision regarding the forfeiture of his service prior to 1984 remained in effect. *Id.* at 169.  On July 13, 2004, Plaintiff, acting pro se, sent ABC a letter stating that he intended to appeal the decision, but he was awaiting documentation from the Social Security Administration demonstrating that he was employed from 1975 through 1988. *Id.* at 31-32. On August 4, 2004, Plaintiff appealed the decision and attached W-2s for 1987 and 1988 and his earnings record from social security.  Those records show, inter alia, that Plaintiff worked for Valley Bell Products, Inc. (hereinafter Valley Bell) from 1986 through 1988, with earnings of $2,550.00 in 1986, $167.39 in 1987, and $3,830.40 in 1988. *Id.* at 35-40.  At the time Plaintiff worked for Valley Bell, it was a participating employer with the Fund, but not all of its employees were covered.

On August 19, 2004, Carol White, the Pension Clerk for the Fund, wrote a memo to Sheila Lusk, Senior Actuarial Assistant for ABC, regarding Plaintiff's employment. *Id.* at 29.  Ms. White stated that she pulled the remitting forms for Valley Bell and there was no record of receiving contributions from Plaintiff.  Ms. White also said she called Marie Jones at Valley Bell and Ms. Jones told her "it was during that time (she thought) that Valley Bell sold part of the company to Borden and there was quite a mix up over that.  She also said Social Security did not show wages for several employees that year due to the sale." *Id.*  In addition, Ms. White said she spoke with Local 505 and there was no mention of Plaintiff in the records it had from Valley Bell. *Id.*

On October 11, 2004, Kenneth Joos, Senior Vice President of ABC, sent the Appeals Committee a letter explaining that Plaintiff was appealing and had provided records showing that he was employed at Valley Bell. *Id*. at 167.  He related to the Committee that Ms. White was advised of irregularities in record keeping at Valley Bell, and that several employees did not have earnings reports sent to the Social Security Administration.  Mr. Joos also reported that the Fund had no record of contributions for Plaintiff during that period of time.

On November 3, 2004, the Appeals Committee for the Fund considered Plaintiff's appeal and requested additional information before it made a recommendation to the Trustees. *Id*. at 69.  Specifically, the Committee requested a W-2 for 1986 and a written job description of any positions Plaintiff held while at Valley Bell.  Upon request of Plaintiff, Mr. Joos agreed to defer a decision on his appeal until February of 2005. *Id*. at 68.

On January 4, 2005, Plaintiff applied for a "Disability Benefit" effective January 1, 2004.  To be eligible for this benefit or an "Early Retirement Benefit," a covered employee must have at least 15 years of "Credited Service." *Employer-Teamsters Local Union Nos. 175 and 505 Pension Trust Fund, Pension Plan*, at § 2.04(b) and (c).[5]  In conjunction with his application for

---

[5]"To be eligible for a Disability Pension Benefit, a Participant must become entitled to receive Disability Benefits under the Social Security Act . . . as well as having completed at least fifteen (15) years of Credited Service, including five (5) years of Future Credited Service, when disability is incurred." *Id*. at § 2.04(c), in part  The Early Retirement Benefit provision in § 2.04(b) provides, in full:

> To be eligible for Early Retirement Benefits, a Participant must:

> (continued...)

benefits, Plaintiff sent a letter to the Pension Trust Office explaining why he is entitled to additional credits towards his pension. *Admin. R.* at 162. In his letter, Plaintiff described his job responsibilities during the time period in question. *Id.* at 163.  He said he trained as a driver and learned how to maintain, rotate, and price products in stores.  After being trained, he took over ice cream routes and then went on to deliver milk.  He said he also would help load and unload trucks. *Id.*  Plaintiff stated that "[a]ll . . . [his] work out of Teamsters local 505 was under Collective Bargaining Agreement as attested to by enclosed letter from Mr. Bartram (Union Representative during years in question.)" *Id.* at 162 (emphasis original).  The letter Plaintiff referred to was dated December 27, 2004, and was written by Donald Bartram, Retired Business Agent and President of Local 505.  In the letter, Mr. Bartram wrote:

> To whom it may concern:
>
> David Bush was an employee of Valley Bell Dairy Located in Point Pleasant, West Virginia during the years 1986, 1987 and 1988.

---

[5](...continued)

> (i)     retire from Covered Employment after having attained at least age fifty-five (55), and
>
> (ii)    have completed at least fifteen (15) Years of Credited Service including five (5) Years of Future Credited Service.
>
> For employees having one or more hours of service on or after May 1, 1979, the foregoing sentence requiring the Participant to have attained at least age fifty-five (55) is replaced by at least age fifty-two (52).

*Id.* at § 204(b).

>Valley Bell was a party to the collective bargaining agreement with the Teamsters Local 505 Huntington, West Virginia.

*Id*. at 164 (some capitalization deleted).

On February 1, 2005, the Appeals Committee met and recommended Plaintiff's appeal be denied. *Id*. at 182.  The Appeals Committee found that Plaintiff "had not proven to the Committee's satisfaction that he was employed in a bargaining unit capacity for which contributions were payable to the Fund during 1986." *Id.*  On February 10, 2005, the Trustees met and agreed with the Committee's recommendation. *Id*. at 183.

On February 15, 2005, counsel for the Fund sent Plaintiff a letter denying his appeal. In part, the letter states:

>In making their determination, the Trustees considered the Plan Document, the records at the Fund Office, the records from Locals 175 and 505, the records from Social Security, the records provided by you, . . . Mr. Bartram's letter and the Laws of ERISA. In particular, while the Social Security documents and Mr. Bartram indicate that you did work for Valley Bell during 1986, 1987 and 1988, the Fund Office has no contributions from Valley Bell on your behalf, while having received many contributions for other employees working under the Collective Bargaining Agreement with Valley Bell.  Furthermore, Local 175 has no records of you ever being a member through that Union Hall, and Local 505 showed that you last paid dues during that period of time in September of 1984 and were suspended as a result of failure to pay dues on April 2, 1985.  You were then reinstated on November 10, 1988, which indicates that your work with Valley Bell would not have been under the Collective Bargaining Agreement but in some other

capacity.  This is consistent with Mr. Bartram's letter.
In addition, there were no records from the Union
Hall to show that you were placed on the seniority list
and no company remittance forms with your name on
it for dues payments.

For these reasons, it was determined that your
break in service from 1984 through 1988 was not
cured.

\*          \*          \*

In that you had five one year interruptions of
service between 1984 and 1988, the credited service
prior to 1984 has been forfeited.  In order for you to
perfect your appeal and regain that credited service,
it is necessary for you to show that your work with
Valley Bell during that period of time from 1986
through 1988 was under a collective bargaining
agreement whereby pension contributions were
required to be made to this Fund.

*Id*. at 187-88.

On July 17, 2007, Plaintiff applied for Normal Retirement Benefits so that he could

begin receiving benefits by his sixtieth birthday on October 16, 2007. *Id*. at 7.  In the letter dated

August 6, 2007, Plaintiff was awarded those benefits. *Id*. at 14-16.   However, the letter reiterated

that Plaintiff would not receive credit for his service prior to 1989. *Id*. at 14-15.  Disagreeing with

this decision, Plaintiff filed this action pursuant to the Employee Retirement Income Security Act

of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.,* against ABC and the Fund on December 15, 2008.  The

parties have filed cross-motions for summary judgment and the issues are now ripe for decision.

## II.
## SUMMARY JUDGMENT STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. The nonmoving party must satisfy its burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. In reviewing the evidence of this case, the Court finds that there is no genuine issue of material fact at issue. Accordingly, this case may be properly disposed of on summary judgment.

## III.
## ABC'S MOTION FOR
## SUMMARY JUDGMENT

Before proceeding with determining the propriety of Plaintiff's benefit claim, the Court must resolve ABC's Motion for Summary Judgment. In its motion, ABC argues that it is a third-party administrator and it only performs administrative functions such as calculating benefits. ABC asserts that it has no authority under the terms of the Employer's Pension Plan (hereinafter the

Plan) and the Agreement and Declaration of Trust to make any final decisions on whether a claim for benefits should be granted or denied. Rather, that responsibility is vested with the Trustees of the Fund. ABC states it had nothing to do with the final decision to deny Plaintiff's benefit request and, therefore, it must be dismissed. Plaintiff has not filed any response to ABC's Motion for Summary Judgment

This Court previously addressed ABC's role in handling the administrative functions of the Employer-Teamsters Joint Local Nos. 175/505 Pension Trust Fund in *Beckner v. American Benefit Corporation*, No. 3:06-0184, 2007 WL 130321 (S.D. W. Va. Jan. 16, 2007). In *Beckner*, this Court found no evidence that ABC had a fiduciary role and, therefore, granted summary judgment in favor of ABC. 2007 WL 130321, at *5, *aff'd*, 273 Fed. Appx. 226, 232 (4th Cir. 2008) (unpublished) (affirming this Court and finding "no evidence to support the suggestion that ABC had a fiduciary role in . . . [the plaintiff's] case"). Likewise, the Court find no evidence in this case that ABC took on a fiduciary role. Thus, the Court **GRANTS** ABC's Motion for Summary Judgment. [Doc. No. 19].

**IV.**
**SUMMARY JUDGMENT**
**ON BENEFIT CLAIM**

**A.**
**Standard of Review**

In reviewing the benefit claim, the parties disagree on the standard of review. Under ERISA, courts must review an administrator's decision to deny pension plan benefits *de novo*, unless the plan itself confers discretionary authority upon the administrator "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101,

115 (1989).  When an administrator possesses such discretion, courts may review the eligibility determination only for an abuse of discretion. *Id*; *Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310, 315 (4th Cir. 2001) (citation omitted).  The Fund argues that the abuse of discretion standard applies, while Plaintiff argues that a de novo review should be conducted.  In *Beckner*, this Court addressed this precise issue and found that the abuse of discretion standard applies to this Plan. 2007 WL 130321, at *4-5.  This decision was affirmed by the Fourth Circuit. 273 Fed. Appx. 226, at *3.[6] The Court sees no reason to depart from that holding in this case.

In considering whether an administrator abused its discretion, the Fourth Circuit identified in *Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000), a number of non-exclusive factors that a court may consider.  These factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

---

[6]Both *Beckner* and this case involved the 1998 version of the Plan and the 1976 Trust Document with Amendments.  Although the Plan in this case added Amendments 6, 7, and 8 in 2006 and 2008, which did not exist when *Beckner* was filed, those Amendments do not impact the discretion given to the Trustees in making benefit determinations.

201 F.3d at 342-43 (footnote omitted).  Plaintiff argues that if the Court applies the abuse of discretion standard, the Court should reduce the level of discretion it affords the Fund because a conflict of interest exists by virtue of the fact the Fund both evaluates claims and pays benefits.

In *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008), the Supreme Court explained that "[i]f a benefit plan gives discretion to an administrator or fiduciary who *is operating under a conflict of interest*, that conflict must be *weighed as a factor* in determining whether there is an abuse of discretion." 128 S. Ct. at 2348 (emphasis added in *Metropolitan Life;* quoting, in part, *Firestone Tire & Rubber Co.*, 489 U.S. at 115; internal quotation marks and other citation omitted)). However, as noted by the Fund, this case involves a trust fund situation in which the Trustees making the benefit decision have no financial interest in the outcome.  Thus, it is unlike *Glenn* in which an insurance company both evaluated and paid claims and an award of benefits impacted its bottom-line profits.

In a trust situation, the Fourth Circuit stated in *Guthrie v. National Rural Electric Cooperative Association Long-Term Disability Plan*, 509 F.3d 644 (4th Cir. 2007), that "[c]ourts have generally not considered the employer trust fund structure an 'inherent conflict.'" 509 F.3d at 650 (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 164  n.6 (3d Cir. 2007) (noting that when employee benefits are paid out a fully funded and segregated ERISA trust fund rather than an employer's operating budget, no structural conflict of interest is created)).  Indeed, in *Guthrie*, the Fourth Circuit found the trust fund structure at issue "remove[d] the inherent incentive to deny claims because the funds" did not come from the assets of either the non-profit trade association

which sponsored the trust fund or the independent third-party administrator. *Id.* Therefore, the Fourth Circuit found the district court properly refused to consider that a conflict of interest existed. *Id.* This Court finds the same reasoning applies here.

The Fund in this case is a multi-employer Plan, which collects contributions from employers in order to provide benefits to eligible participants. Once an employer pays it contributions that money no longer belongs to the employer. Benefit decisions are made by the Trustees who are not paid for their service and are comprised of both employer and union representatives. Although the union representatives have a financial interest in the Plan to the extent they are participants and may someday become eligible for benefits themselves, that interest is insufficient to support an adjustment to abuse of discretion standard. Therefore, the Court declines to alter the abuse of discretion standard in reviewing the decision made in this case.

**B.**
**Discussion**

Under the Section 15.05(b) of the 1998 Plan,[7] a "'Break-in-Service' shall mean the number of one (1) year breaks-in-service equals or exceeds the greater of (a) five consecutive one (1) year breaks-in-service and (b) the aggregate number of years of service earned before the consecutive breaks-in-service." *Employer-Teamsters Local Union Nos. 175 and 505 Pension Trust Fund, Pension Plan*, at §15.05(b), in part.[8] This section further provides that if a Break-in-Service

---

[7]Although earlier versions of the Plan defined "Break-in-Service" differently, the parties both cite the language from the 1998 Plan as applying to this case.

[8]Pursuant to § 15.05(g) a "One Year Interruption of Service" is defined as "a calendar year in which less than thirteen (13) weeks of contributions are made to the Trust Fund, as otherwise
(continued...)

occurs, "all Credited Service and Years of Participation arising from employment prior to such Break-in-Service Date shall be completely forfeited if such Break-in-Service occurs prior to the time a Participant has completed ten (10) years of Participation." *Id*., in part.

Plaintiff asserts that the documentation he submitted establishes that he did not experience a Break-in-Service as defined by the Plan.  Plaintiff states that it is uncontested that he worked for Valley Bell in 1986, 1987, and 1988, and that record keeping at Valley Bell was irregular during that time period.  In addition, Plaintiff argues that it is undisputed that Local 505 supplied labor to Valley Bell.  However, even though the evidence submitted by Plaintiff is uncontested, the Fund found Plaintiff failed to demonstrate that he did not have a Break-in-Service as a participating member.  Upon review, the Court cannot say that the Fund abused its discretion in reaching this decision.

As noted by the Fund, the mere fact Plaintiff worked for Valley Bell and Valley Bell received some labor from Local 505 does not mean that Plaintiff was working under the Teamsters collective bargaining agreement during the time period.  Valley Bell had both covered and non-covered employees, and there is nothing to establish that Plaintiff was a covered employee.  Indeed, the Trustees reviewed the Report and Remittance Forms submitted by Valley Bell and found Valley Bell paid contributions for a number of workers during that time, but there was no mention of Plaintiff.  Likewise, the Fund reviewed the Local 505's records and found that Plaintiff failed to pay

---

[8](...continued)
required, by an Employer(s) on behalf of a Participant." *Id*. at §15.05(g).

his dues, was suspended in April of 1985, and he was not reinstated until November of 1988. Moreover, the Fund observed that, although there may have been some irregularities with Valley Bell reporting Social Security earnings, Plaintiff produced his earning statements so those irregularities did not necessary apply to him. Finally, the Fund noted there is no allegation of any irregularities with the Fund's or Local 505's records which also were reviewed. Given the insufficiency of the evidence connecting Plaintiff's work for Valley Bell with being covered employment, the Fund found that Plaintiff failed to establish he was a Participant of the Plan in 1986, 1987, and 1988. For this same reason, the Court agrees with the Fund and finds the Fund did not abuse its discretion in determining that a Break-in-Service occurred.

Having concluded that Plaintiff is not entitled to receive credit for 1986, 1987, and 1988, it is clear that Plaintiff cannot reach the 15 years of Credited Service he needs to obtain either a Disability or Early Retirement under the Plan.[9]  Nevertheless, Plaintiff also argues that ERISA requires pension plans to count every year of service for vested employees regardless of whether a Break-in-Service occurred. In other words, although the Court has determined that Plaintiff cannot receive credit for his work in 1986 through 1988, the issue becomes whether the forfeiture provision is invalid and he should receive credit for the years he worked prior to 1984. Although not clearly

---

[9]The Fund states that it is undisputed that Plaintiff earned 118 months of Credited Service from 1989 through 2004 and 50 months of service from 1975 through 1983, for a total of 168 months. Thus, Plaintiff remained 12 months shy of the 180 months he needed for eligibility. Although Plaintiff states he had 169 months of Credited Service, it is clear under either scenario that he is short of the 180 months needed to qualify for the benefit given that the disputed time period from 1986 through 1988 cannot be counted.

argued in the briefs, credit for those years presumably would increase the dollar amount of his Normal Retirement Benefit.

In support, Plaintiff cites *DiGiacomo v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 420 F.3d 220 (3d Cir. 2005), and *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151 (2d Cir. 2003).  In both of those cases, the circuit courts determined that, irrespective of the language in the plans, ERISA requires pre- and post-break-in-service time to be aggregated.  On the other hand, the Fund cites a contrary decision from the Seventh Circuit, *Jones v. UOP*, 16 F.3d 141 (7th Cir. 1994), which permitted the Fund to forfeit time prior to a break-in-service.  However, all three of these cases discuss a statutory provision which refers to *pre-ERISA* breaks-in-service.[10]  In this case, there was no pre-ERISA break-in-service.  ERISA became law on September 2, 1974, and Plaintiff did not even work for a participating

---

[10]See § 203(b)(1) of ERISA, which provides, in part:

> (1) In computing the period of service under the plan for purposes of determining the nonforfeitable percentage under subsection (a)(2) of this section, all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account, except that the following may be disregarded:
>
> \*        \*        \*
>
> (F) years of service before this part first applies to the plan if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date[.]

29 U.S.C. § 1053(b)(1)(F), in part.

employer until 1975. In addition, his "Break-in-Service" did not occur until 1984. Unfortunately, neither party to this matter has briefed or discussed what happens when a break-in-service occurs after ERISA became effective.

Having no briefing on the issue, the Court declines to address it at this time and, for the reasons otherwise stated above, **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** the Fund's Motion for Summary Judgment. However, the Court will withhold dismissing this case from the docket of this Court to give Plaintiff the opportunity to address the issue of a break-in-service which occurred after ERISA's adoption. If Plaintiff chooses to move for summary judgment on this particular issue, he must specify in his memorandum in support of the motion the specific statutory section he believes applies and cite any relevant case law to a post-ERISA break-in-service. Plaintiff must file his motion and brief, if any, **on or before April 14, 2010**. The Fund shall have until **on or before April 28, 2010**, to file its Response. Plaintiff must file his Reply **on or before May 5, 2010**. If Plaintiff chooses not to file a motion and brief on this issue by the April 14, 2010 deadline, the Court will dismiss this case from the docket of the Court.

**V.**
**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Motions for Summary Judgment filed on behalf of ABC and the Fund [Doc. Nos. 19 & 23] and **DENIES** the Motion for Summary Judgment filed by Plaintiff. [Doc. No. 21].

The Court **DIRECTS** the Clerk to send a copy of this Order to all counsel of record and any unrepresented parties.

ENTER:        March 30, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE